IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TIMOTHY W. SAUNDERS,      )
           )
      Plaintiff,     )
           )
   v.         )      CASE NO. 2:20-CV-456-WKW
           )          [WO]
JEFFERSON S. DUNN, *et al.*,    )
           )
      Defendants.   )

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. INTRODUCTION**

Plaintiff Timothy W. Saunders ("Saunders") is an Alabama death row inmate in the custody of the Alabama Department of Corrections ("ADOC"). Mr. Saunders presently has no scheduled execution date. He has sued the Commissioner of ADOC, the Warden of Holman Correctional Facility, the Attorney General of the State of Alabama in their official capacities, and the ADOC ("State Defendants"), as well as attorneys Michael L. Edwards and John G. Smith. Mr. Edwards and Mr. Smith represented Mr. Saunders *pro bono* in post-conviction litigation in state and federal courts (the "Individual Defendants") from July 27, 2009, to March 12, 2020.

The State Defendants and the Individual Defendants, in separately filed submissions, have moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Order addresses only the Individual

Defendants' motion to dismiss.  (Doc. # 17.)  Mr. Saunders brings claims against the Individual Defendants pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.  For the reasons to follow, the motion is due to be granted because Mr. Saunders has not alleged facts plausibly demonstrating that the Individual Defendants acted under color of state law.

## II.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested.

## III.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The

well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id.* (citation omitted).

## IV. BACKGROUND

Lethal injection is the default method of execution in the State of Alabama. Ala. Code § 15-18-82.1(a). In March 2018, Alabama Governor Kay Ivey signed into law Senate Bill 272, which added nitrogen hypoxia as an alternative method of execution in Alabama.[1] (Doc. # 1, ¶ 66); Ala. Code § 15-18-82.1(b)(2). The bill became effective on June 1, 2018. (Doc. # 1, ¶ 70.)

Section 15-18-82.1(b)(2) permits a death row inmate one opportunity to elect execution by nitrogen hypoxia. The timing and procedure an inmate must follow to elect nitrogen hypoxia are set out in § 15-18-82(b)(2), which states:

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date. If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

---

[1] Electrocution is also an alternative method of execution in Alabama, but is not at issue in this case.

Mr. Saunders's certificate of judgment was issued prior to June 1, 2018.  Thus, from June 1, 2018, to June 30, 2018, Mr. Saunders had the opportunity to elect an execution by nitrogen hypoxia.  Mr. Saunders did not make that election during this allotted time period.  (Doc. # 1, ¶ 71.)  Therefore, under § 15-18-82(b)(2), he waived the election for death by nitrogen hypoxia.

Mr. Saunders faults his attorneys, Mr. Edwards and Mr. Smith, for his failure to make a timely election under § 15-18-82(b)(2).  He contends that, for at least six years, and importantly during the thirty-day election period, the Individual Defendants "labor[ed] under an irreconcilable conflict of interest" while representing him in state post-conviction and federal habeas proceedings.  (Doc. # 1, ¶ 16; *see also* Doc. # 1, ¶¶ 11, 12, 19.)  According to Mr. Saunders, this conflict of interest arose when the Alabama Attorney General appointed Mr. Edwards and Mr. Smith as Deputy Attorneys General to represent ADOC, the Warden, and the Commissioner in pending federal litigation.  (Doc. # 1, ¶¶ 11, 12, 23, 25, 33–34, 38, 47.)  In particular, Mr. Edwards and Mr. Smith represented ADOC defendants in a § 1983 class-action lawsuit—*Braggs v. Dunn*, 2:14-CV-601-MHT (M.D. Ala. June 17, 2014)—filed by ADOC inmates for alleged constitutional violations pertaining to the custodial provision of medical care and mental health treatment.[2]  (*See* Doc.

---

[2] The Complaint alleges that Mr. Edwards was appointed a Deputy Attorney General on July 2, 2014.  (Doc. # 1, ¶ 23.)  The Complaint does not allege that date of Mr. Smith's appointment, but the allegations establish that Mr. Smith actively was representing the ADOC

# 1, ¶¶ 33–34, 38.)  Mr. Saunders alleges that he is a member of the class certified in *Braggs v. Dunn*.[3]  (Doc. # 1, ¶ 36)

Mr. Saunders contends that, to his constitutional detriment, the Individuals Defendants did not "consult or advise" him—either before, during, or after the thirty-day election period—about the enactment of § 15-18-82.1(b)(2), about "the ramifications of not electing nitrogen hypoxia as the method of execution, or even [about] nitrogen hypoxia generally."  (Doc. # 1, ¶ 86.)  He alleges that they would not even respond to his written and telephonic inquiries about the nitrogen hypoxia election.  (Doc. # 1, ¶ 87.)

Mr. Saunders brings three § 1983 causes of action against the Individual Defendants.  He alleges that the Individual Defendants "deprived [him] of his statutory right to conflict-free counsel during his federal habeas proceedings" in violation of "his constitutional right to Due Process and Equal Protection in the one-time statutory election of nitrogen hypoxia as his method of execution."  (Doc. # 1, ¶ 107.)  Mr. Saunders also alleges that the Individual Defendants violated his

---

defendants in *Braggs v. Dunn* in 2016.  (Doc. # 1, ¶¶ 33–34, 38; *see also* Doc. # 1, ¶ 47 (alleging that Mr. Smith was appointed a Deputy Attorney General on November 7, 2018, to represent ADOC defendants in a second lawsuit).)

[3] Mr. Saunders admits that he signed a waiver on August 23, 2016, advising him of the Individual Defendants' "potential conflict of interest" arising from their representation of the ADOC in *Braggs v. Dunn*.  However, Mr. Saunders alleges that he did not knowingly execute the waiver.  (Doc. # 1, ¶¶ 35, 36.)  The Complaint alleges that Mr. Edwards and Mr. Smith ceased representing Mr. Saunders in federal court in his 28 U.S.C. § 2254 proceedings on March 12, 2020. (Doc. # 1, ¶ 19; *see also* Doc. # 17-1.)

constitutional right of access to the courts.  As to this claim, Mr. Saunders contends that the Individual Defendants deprived him of the "tools" he needed to make an informed decision during the hypoxia election period, which included "statutorily qualified conflict-free counsel," thus causing him to miss the election deadline. (Doc. # 1, ¶ 124.)

## V.  DISCUSSION

The Individual Defendants urge dismissal of Mr. Saunders's claims against them on several grounds.  One ground is dispositive:  The Complaint fails to allege that Mr. Edwards and Mr. Smith acted under color of state law during their representation of Mr. Saunders.  Hence, they are not subject to suit under § 1983.

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim for relief under § 1983, a plaintiff must allege that the defendant committed the alleged deprivation "under color of state law." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).  Section 1983 does not generally provide for suit arising from actions taken by private

6

individuals.  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

The Supreme Court's decision in *Polk County v. Dodson*, 454 U.S. 312 (1981), shows why the Complaint fails to state this essential element of a § 1983 claim against the Individual Defendants.  In *Polk*, Russell Richard Dodson appealed his criminal conviction for robbery to the Iowa Supreme Court.  Martha Shepard, a full-time public defender, was appointed to represent Mr. Dodson for the appeal.  After a review of the record, however, she concluded that the appeal was frivolous.  The Iowa Supreme Court concurred, granted her motion to withdraw, and dismissed the appeal.  *Id.* at 314.  Disgruntled with the dismissal of his appeal, Mr. Dodson sued Ms. Shepard under § 1983, alleging that her withdrawal had deprived him of his right to counsel, denied him due process, and subjected him to cruel and unusual punishment.  *See id.* at 315.  He argued that Ms. Shepard acted under color of state law for the purpose of § 1983 because her employer was the county.  The district court disagreed and entered judgment for Ms. Shepard; the court of appeals reversed; and the Supreme Court of the United States granted certiorari.  *See id.* at 315–17.

The Supreme Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant

7

in a criminal proceeding." *Id.* at 325.  The lawyer-client relationship between a public defender and an indigent client is "identical to that existing between any other lawyer and client," *id.* at 318; it bears the hallmark of "professional independence," *id.* at 321, which must remain "free of state control," *id*. at 322.  A defense lawyer—whether retained or appointed—does not "act[] on behalf of the State or in concert with it" when performing his professional obligations to his client, *id.* at 318 (alteration added).  To the contrary, "he is the State's adversary." *Id.* at 323 n.13; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982) (observing that in *Polk*, "[w]e concluded . . . that a public defender, although a state employee, in the day-to-day defense of his client, acts under canons of professional ethics in a role adversarial to the State," and thus, a public defender's representation "would not support a § 1983 suit" (citing *Polk*, 454 U.S. at 320)).

Mr. Saunders's habeas proceedings, as an offshoot of his underlying criminal conviction, parallel the proceedings in *Polk*.  However, it is the distinctions between the representation of Mr. Dodson and Mr. Saunders in those proceedings that drives home why Mr. Edwards's and Mr. Smith's representation of Mr. Saunders was not undertaken under color of state law.  As alleged, Mr. Edwards and Mr. Smith were not paid by the State to represent Mr. Saunders; they were private attorneys working *pro bono* on behalf of Mr. Saunders and "received no remuneration."  (Doc. # 1, ¶¶ 11, 12, 31.)  There are no allegations that the State dictated how Mr. Edwards and

Mr. Smith were to perform their professional duties in representing Mr. Saunders during his post-conviction proceedings.  *Cf. Polk*, 454 U.S. at 322 ("At least in the absence of pleading and proof to the contrary, we therefore cannot assume that Polk County, having employed public defenders to satisfy the State's obligations under *Gideon v. Wainwright*, has attempted to control their action in a manner inconsistent with the principles on which *Gideon* rests." (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963))).  Nor are there any allegations that Mr. Edwards and Mr. Smith would have been acting on behalf of the State had they advised Mr. Saunders with regard to the state statutory revision adding nitrogen hypoxia as a method of execution. Even if it is assumed that Mr. Edwards and Mr. Smith had a professional obligation to advise Mr. Saunders on the particulars of the election in § 15-18-82.1(b)(2),[4] *Polk* makes clear that this obligation would not convert Mr. Edwards and Mr. Smith into state actors.  *Cf. id.* at 322 n.12 ("Our factual inquiry into the professional obligations and functions of a public defender persuades us that Shepard was not a 'joint participant' with the State and that, when representing respondent, she was not acting under color of state law.").

---

[4] The Individual Defendants argue that the scope of their representation of Mr. Saunders in his post-conviction proceedings did not encompass a duty to advise Mr. Saunders on Alabama's statutory revision adding nitrogen hypoxia as a method of execution.  This opinion does not express any view on the Individual Defendants' position.

Mr. Saunders's brief omits mention of the *Polk* decision. Presumably recognizing *Polk*'s blockade, Mr. Saunders attempts to divert the focus to the alleged conflict of interest created when the State deputized Mr. Edwards and Mr. Smith to represent the Commissioner and ADOC in other lawsuits. Mr. Saunders argues that, as a result of their deputized status, Mr. Edwards and Mr. Smith "had strong ties to the State." (Doc. # 18, at 8.) Relying on *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263 (11th Cir. 2003), Mr. Saunders contends that, because of those strong ties, the joint-action test applies to convert the Individual Defendants' action (or lack thereof) into state action for purposes of § 1983's color-of-law requirement. (Doc. # 18, at 8.)

The joint-action test determines whether a private party has taken on the role of a state actor. Under this test, "'the governmental body and private party must be intertwined in a symbiotic relationship.'" *Focus on the Family*, 344 F.3d at 1278 (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001)). That relationship also must "involve 'the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001)).

In *Focus on the Family*, invoking § 1983 as a remedy for alleged constitutional violations, Focus on the Family sued a county transit authority for refusing to sell it advertising on the bus shelters. *Id.* at 1270. The district court found that the private

company the county had subcontracted to sell the advertising space, not the county, rejected Focus on the Family's advertisement, and, thus, there was no state action under § 1983. *See id.* at 1271.

The Eleventh Circuit reversed. It applied the joint-action test to hold that the county could be held responsible for the private subcontractor's rejection of the advertisements. The county "retain[ed] final decision-making authority over the acceptability of all proposed advertisements." *Id.* at 1278. "[T]his [was] not a case where a private actor in a contractual relationship with a governmental entity acted independently in harming a third party, but rather that the state, acting through a private entity, caused the third party's harm." *Id.*

Mr. Saunders's reliance on *Focus on the Family* is misguided. The conduct at the heart of Mr. Saunders's Complaint is Mr. Edwards's and Mr. Smith's allegedly ineffective assistance of counsel that resulted in Mr. Saunders's failing to make a timely election for death by nitrogen hypoxia under § 15-18-82.1(b)(2). Mr. Saunders has not alleged that the State contracted with Mr. Edwards and Mr. Smith to represent him in his post-conviction proceedings. Nor has he alleged that the State directed Mr. Edwards and Mr. Smith not to counsel Mr. Saunders about the revision to the Alabama statute, its election procedures and temporal limitations, and the consequences of the failure to make a timely election. Rather, the contractual relationship Mr. Saunders identifies is the one deputizing Mr. Edwards and Mr.

Smith to represent the State in *Braggs v. Dunn*.  There also are no allegations that the State's contractual arrangement with Mr. Edwards and Mr. Smith had anything to do with the amendment to § 15-18-82.1, with adding an election for a death sentence by nitrogen hypoxia, with the statute's implementation in state prisons, or with Mr. Edwards's and Mr. Smith's professional obligations, if any, to counsel Mr. Saunders on the statutory revision.  At best, the harm Mr. Saunders complains of is a collateral consequence of a third-party contract.  *Focus on the Family* is, therefore, inapposite.

## VI.  CONCLUSION

For the foregoing reasons, because there are no allegations establishing that the Individual Defendants—Michael L. Edwards and John G. Smith—acted under color of state law, Mr. Saunders fails to state a § 1983 claim for which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Accordingly, it is ORDERED that the Individual Defendants' motion to dismiss (Doc. # 17) is GRANTED and that Mr. Saunders's claims against the Individual Defendants are DISMISSED with prejudice.

DONE this 29th day of September, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE