IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY W. SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-456-WKW |
| | ) | [WO] |
| JOHN Q. HAMM,[1] *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Timothy W. Saunders ("Saunders") is a death row inmate in the custody of the Alabama Department of Corrections ("ADOC"). Mr. Saunders has no scheduled execution date. He filed this action, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and of his statutory rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"). His claims proceed against the Commissioner of ADOC, the Warden of Holman Correctional

---

[1] Pursuant to Federal Rule of Civil Procedure Rule 25(d)(1), John Q. Hamm, the current Commissioner of the Alabama Department of Corrections, is automatically substituted in his official capacity as a party to this action, replacing former Commissioner Jefferson S. Dunn.

Facility, the Attorney General of the State of Alabama, all in their official capacities, and the ADOC ("Defendants").[2]

Defendants have moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief can be granted.  (Doc. # 12.)  This motion has been fully briefed and is ripe for review. Defendants' motion to dismiss is due to be granted in part and denied in part.

## II.  JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  Personal jurisdiction and venue are uncontested.

## III.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc*., 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the

---

[2] Mr. Saunders's Complaint also named as Defendants Michael L. Edwards and John G. Smith, attorneys who represented him *pro bono* in post-conviction litigation in state and federal courts from July 27, 2009, to March 12, 2020.  On September 29, 2021, the court granted their motion to dismiss and dismissed the claims against them because there were no allegations establishing that they acted under color of state law while representing him; hence, they were not subject to suit under 42 U.S.C. § 1983.  (Doc. # 22.)

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id*. (citation omitted).

Additionally, a court may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment "if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Defendants have attached the following documents to their motion to dismiss: (1) a form signed by Mr. Saunders purporting to waive his attorneys' potential conflict of interest; (2) an affidavit from Captain Jeff Emberton, an ADOC corrections officer; (3) correspondence between Mr. Saunders's current counsel and ADOC's counsel dated April 30, 2020; and (4) ADOC's telephone records of Mr. Saunders's phone calls. (Docs. # 12-1 through 12-5.) Only the waiver meets the *Hi-Tech Pharmaceuticals* standard: The Complaint refers to the waiver (*see* Doc. # 1, ¶ 35); the waiver is central to Mr. Saunders's claims; and Mr. Saunders has not disputed its authenticity. As to the remainder, these documents are not referenced in the Complaint and will not be considered.[3]

---

[3] The motion will not be converted to one for summary judgment. *See* Fed. R. Civ. P. 12(d).

# IV.  BACKGROUND

Having exhausted appeals of his conviction and death sentence, Mr. Saunders

is awaiting execution for the crimes he committed eighteen years ago:

> In 2004, Saunders beat 77-year-old Melvin Clemons to death with a
> crowbar while robbing him and then burglarized his home. While
> inside, he also terrorized and attempted to kill Melvin Clemons' 74-
> year-old wife, Agnes Clemons.  She was able to grab a shotgun that was
> in the house and fire it at him, which chased him off.

> Saunders confessed to the police that he killed Melvin Clemons,
> attacked Agnes Clemons, and burglarized their home.

*Saunders v. Warden, Holman Corrs. Facility*, 803 F. App'x 343, 344 (11th Cir.),

*cert. denied sub nom. Saunders v. Raybon*, 141 S. Ct. 858 (2020).

Lethal injection is the default method of execution in the State of Alabama.

Ala. Code § 15-18-82.1(a).  In March 2018, Alabama Governor Kay Ivey signed

into law Senate Bill 272, which added nitrogen hypoxia as an alternative method of

execution in Alabama.[4]  (Doc. # 1, ¶ 66); Ala. Code § 15-18-82.1(b)(2).  The bill

became effective on June 1, 2018.  (Doc. # 1, ¶ 70.)

Section 15-18-82.1(b)(2) permits a death row inmate one opportunity to elect

execution by nitrogen hypoxia.  The statute establishes the timing and procedure an

inmate must follow to elect nitrogen hypoxia:

---

[4] Electrocution is also an alternative method of execution in Alabama, but it is not an issue
in this case.

> The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. *If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date.* If a warrant of execution is pending on June 1, 2018, or if a warrant is issued within 30 days of that date, the person who is the subject of the warrant shall waive election of nitrogen hypoxia as the method of execution unless a written election signed by the person is submitted to the warden of the correctional facility not later than 48 hours after June 1, 2018, or after the warrant is issued, whichever is later.

Ala. Code § 15-18-82.1(b)(2) (emphasis added).

Mr. Saunders's certificate of judgment was issued prior to June 1, 2018. Under § 15-18-82.1(b)(2), Mr. Saunders had one opportunity for one month—June 2018—to elect an execution by nitrogen hypoxia. He did not make that election during this allotted time. (Doc. # 1, ¶ 71.)

During the election period, some inmates on death row, but not Mr. Saunders, received an election form created by the Federal Defenders for the Middle District of Alabama. The form did not notify inmates of the June 30, 2018 deadline for making an election, and it did not "model or replicate" § 15-18-82.1(b)(2).[5] (Doc. # 1, ¶ 77 n.22, ¶¶ 79–80.) The warden "reportedly tasked a corrections officer to distribute the Election Form drafted by the Federal Defenders to all death-row

---

[5] Mr. Saunders elaborates that the form was "created for consultation with clients of the Federal Defenders." (Doc. # 1, ¶ 79.) He was not at the time represented by the Federal Defenders.

inmates." (Doc. # 1, ¶ 76.) The warden did not have in place, however, a process to verify that an inmate had received the Federal Defenders' prepared form, and the corrections officer did not provide a form to Mr. Saunders. (Doc. # 1, ¶ 77 n.22, ¶¶ 78, 80, 87.) Mr. Saunders eventually received the form from a fellow inmate "just four days before" the deadline for an inmate to make an election. (Doc. # 1, ¶ 76, 77 n.22, ¶ 87.)

Mr. Saunders alleges that, after receiving the form, he made "inquiries, in writing and by telephone," to his attorneys "about the nitrogen hypoxia election," but that his inquiries "went unanswered." (Doc. # 1, ¶ 87.) He blames his attorneys for his failure to make a timely election. He says that, during the thirty-day election period, Mr. Saunders's counsel "labor[ed] under an irreconcilable conflict of interest" while representing him. (Doc. # 1, ¶ 16; *see also* Doc. # 1, ¶¶ 11, 12, 19.) According to Mr. Saunders, this conflict of interest arose when the Alabama Attorney General appointed his counsel—Mr. Edwards and Mr. Smith—as Deputy Attorneys General to represent ADOC, the warden, and the commissioner in pending federal litigation. (Doc. # 1, ¶¶ 23, 25, 33–34, 38, 47.) Mr. Edwards and Mr. Smith represented the ADOC Defendants in a § 1983 class-action lawsuit—*Braggs v. Dunn*, 2:14-CV-601-MHT (M.D. Ala. June 17, 2014)—filed by ADOC inmates for alleged constitutional violations pertaining to the custodial provision of medical care

and mental health treatment.[6]  (Doc. # 1, ¶¶ 25–27, 29–30, 32–34, 38.)  Mr. Saunders contends that Mr. Edwards and Mr. Smith did not "consult or advise" him—either before, during, or after the thirty-day election period—about the enactment of § 15-18-82.1(b)(2), about "the ramifications of not electing nitrogen hypoxia as the method of execution, or even [about] nitrogen hypoxia generally."  (Doc. # 1, ¶ 86.)

Furthermore, during the election period, Mr. Saunders alleges that he did not have "access to an adequate law library."  (Doc. # 1, ¶¶ 80, 88.)  At Holman Correctional Facility, where Mr. Saunders is incarcerated, approximately 160 death row inmates share a single computer, which is available during "designated times . . . based on the inmate's individual cell tier location."  (Doc. # 1, ¶ 91.)  "At best, this provides 20–30 persons with approximately three to four shared hours per week to do computerized legal research."  (Doc. # 1, ¶ 91.)  Mr. Saunders alleges:  "It is reported that the legal research available is limited to what is uploaded periodically from a CD distributed by Lexis-Nexis.  This information is not updated on a regular basis."  (Doc. # 1, ¶ 91 n.30.)

Mr. Saunders was thus left on his own to decide whether to make an election. He alleges that he "had no actual notice that the statutory election period was limited

---

[6] The Complaint alleges that Mr. Edwards was appointed a Deputy Attorney General on July 2, 2014.  (Doc. # 1, ¶ 23.)  The Complaint does not allege that date of Mr. Smith's appointment, but the allegations reflect that Mr. Smith actively represented the ADOC defendants in *Braggs v. Dunn* in 2016.  (Doc. # 1, ¶¶ 33–34, 38.)

to 30 days." (Doc. # 1, ¶ 87.)  Even if had received actual notice, he alleges that he would have been unable to make an election for an execution by nitrogen hypoxia because he suffers from mental and intellectual disabilities.  (Doc. # 1, ¶ 129.) Describing the nature of his disabilities, Mr. Saunders points out that, during his federal habeas proceedings, his counsel "characterized [him] as having limited education and intellectual ability," as well as having "a history of psychiatric disorders and substance abuse," and that his counsel argued against the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002).  (Doc. # 1, ¶ 98.)  Mr. Saunders also "has a documented history of suicide attempts and has been diagnosed with major depression with psychotic features including auditory hallucinations and bipolar disorder."  (Doc. # 1,  ¶ 99.)   As to his limited education and his cognitive deficiencies, Mr. Saunders qualified for special education services and dropped out of school in the sixth grade.  (Doc. # 1, ¶ 99.)

Based on these disabilities, Mr. Saunders alleges that to elect nitrogen hypoxia, he required the "assistance of counsel or properly-trained mental health personnel employed by [the ADOC]."  (Doc. #1, ¶ 97.)  Defendants did not offer him any assistance during the election period.  (Doc. # 1, ¶ 130.)

On April 30, 2020, Mr. Saunders's present counsel contacted Assistant Attorney General Lauren Simpson requesting that the State "make an exception and

allow [Mr. Saunders] to opt-in to the nitrogen hypoxia method of execution." (Doc. # 1, ¶ 100.) That request was denied. (Doc. # 1, ¶ 100.)

After the request was denied, Mr. Saunders filed this lawsuit on June 30, 2020. In his Complaint, Mr. Saunders brings four claims against Defendants: (1) a violation of his Fourteenth Amendment rights to procedural due process and equal protection during the one-time election period for a nitrogen hypoxia execution (Count One); (2) a violation of his First and Fourteenth Amendment rights of access to the courts (Count Two); (3) a violation of Title II to the ADA, 42 U.S.C. § 12112(a), by failing to provide him a reasonable accommodation during the election period for nitrogen hypoxia (Count Three); and (4) a claim that Alabama's three-drug lethal injection method of execution violates the Eighth Amendment's ban on cruel and unusual punishment (Count Four). (Doc. # 1.) Mr. Saunders seeks declaratory and injunctive relief, including an order that Defendants "accept [his] out of time election of nitrogen hypoxia as his method of execution," a declaration that Defendants violated the ADA "for failing to develop and implement reasonable accommodations concerning the nitrogen hypoxia election opt-in for mentally and intellectually disabled death-sentenced inmates," and "an order declaring Alabama's current lethal injection protocol unconstitutional and enjoining Defendants from executing Mr. Saunders using that protocol." (Doc. # 1 at 33–34.)

## V.  DISCUSSION

Defendants have moved to dismiss all claims under Rule 12(b)(6).  The claims in Counts One, Two, and Three survive Rule 12(b)(6) scrutiny; the claim in Count Four does not.

### A.    Count One—Fourteenth Amendment Claims

In Count One, Mr. Saunders alleges that Defendants violated his Fourteenth Amendment rights to procedural due process and equal protection during the June 2018 election period for a nitrogen hypoxia execution.

#### 1.    *Procedural Due Process*

In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Defendants challenge the first and third elements.

##### a.    First Element

Mr. Saunders contends that Alabama Code § 15-18-82.1(b)(2) contains "a state-created liberty and property interest" for death-sentenced inmates in Alabama to choose nitrogen hypoxia over lethal injection as their method of execution.  (Doc. # 1, ¶ 109.)  He contends further that Defendants deprived him of his interests to make that election.  (Doc. # 1, ¶ 109.)

10

Defendants argue that Mr. Saunders cannot satisfy the first element because another judge of this court found that an inmate does not have an interest in choosing the manner of his execution after the expiration of the thirty-day period. *See Woods v. Dunn*, No. 2:20-CV-58-ECM, 2020 WL 1015763 (M.D. Ala. Mar. 2, 2020). Defendants cite the following language from the *Woods* decision:

> As demonstrated by its plain language, [§ 15-18-82.1(b)(2)] does not confer on Woods any interest other than the opportunity to make an affirmative election of death by nitrogen hypoxia or electrocution, in writing, within the thirty-day window that the Alabama Legislature prescribed. It is undisputed that Woods failed to make a timely election; in fact, during the election period, according to Woods, he refused to participate in the election process at all. Thus, the Court finds that any interest Woods possessed in making an election concerning his method of execution ceased once the election period ended.

*Id.* at *12.

Defendants posit that like Woods, Mr. Saunders did not make an election, even though he "was made aware of the election period" and that Mr. Saunders "had the same thirty-day period and opportunity to elect as every other inmate . . . ." (Doc. # 12, at 35.) Based on these facts, Defendants contend that Mr. Saunders has failed to identify "a constitutionally protected liberty or property interest." (Doc. # 12, at 35.)

Defendants' argument misconstrues the focus of the analysis in *Woods*. At this point in the opinion, the *Woods* court was analyzing Woods's due process claim under the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and

it was assessing the "residual life interest" that Mr. Woods claimed was implicated by the State's action during the election period.  *Woods*, 2020 WL 1015763, at *11. The *Mathews* factors elucidate "at what point in time notice of the opportunity to be heard is constitutionally required" under the third element for establishing a § 1983 procedural due process claim.  *Grayden*, 345 F.3d at 1242.  Defendants' argument improperly conflates the analyses under the first and third elements of a procedural due process claim and thus is not a proper argument for dismissal.

*Woods* also is distinguishable on its facts.  Woods "d[id] not dispute that . . . he was represented by counsel" during the election period.  *Woods v. Comm'r, Alabama Dep't of Corrs.*, 951 F.3d 1288, 1294 (11th Cir.), *cert. denied sub nom. Woods v. Dunn*, 140 S. Ct. 1290 (2020).  The fact that Woods was represented during the election period and "could have contacted his attorney to discuss doubts about or seek explanation of the election form or the implications of the election" was pivotal in the district court's decision.  *Woods v. Dunn*, No. 2:20-CV-58-ECM, 2020 WL 1015763, at *14 (M.D. Ala. Mar. 2, 2020).  There was no evidence that Woods's counsel was operating under a conflict of interest in representing Woods; here, the allegations are that Mr. Saunders was effectively unrepresented due to his counsel's conflict of interest.

Having rejected Defendants' argument challenging the first element, the court proceeds to the third element.

### b.   Third Element

The Eleventh Circuit has held that, when "called on to consider what type of notice is adequate," it "eschew[s] the balancing test in *Mathews*" and applies the "more straightforward" standard set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  *Grayden*, 345 F.3d at 1242 (citation and quotation marks omitted).  Under the test in *Mullane*, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane*, 339 U.S. at 314.

Mr. Saunders alleges that Defendants did not provide adequate notice for enabling him to make an election because (1) they did not give him actual "notice of the statutory 30-day election period"; (2) there was neither an adequate nor accessible law library to research the new statute; (3) he was deprived of "conflict-free counsel" who otherwise could have counseled him on the election; and (4) "the Election Forms were only given to a select group of inmates to distribute as they saw fit."  (Doc. # 1, ¶¶ 112–13.)  The question is whether these deficiencies deprived Mr. Saunders of adequate notice and opportunity to elect nitrogen hypoxia as his method of execution.

Defendants offer four reasons for finding that Mr. Sanders had adequate notice.  First, they suggest that the statute itself provided constitutionally adequate

notice to Mr. Saunders about the election period.  (Doc. # 12, at 37.)  They rely on Justice Thomas's opinion concurring in the denial of a petition for writ of certiorari in *Price v. Dunn*, 139 S. Ct. 1533, 1535 (2019).  The petition was filed by an Alabama death row inmate whose § 1983 suit challenged Alabama's refusal to allow him to elect nitrogen hypoxia for his execution after the expiration of the thirty-day statutory deadline.  Justice Thomas wrote:

> According to Justice BREYER, the warden may not have given petitioner an election form until "72 hours" before the June 30 deadline.  *Price*, 587 U. S., at ——, 139 S. Ct., at 1315.  That "possibil[ity]," *ibid.*, even if true, is irrelevant.  As an initial matter, petitioner (like all other individuals) is presumed to be aware of the law and thus the June 30 deadline.  Moreover, the Alabama statute neither required special notice to inmates nor mandated the use of a particular form.  It merely required that the election be "personally made by the [inmate] in writing and delivered to the warden."  Ala. Code § 15–18–82.1(b)(2).  Cynthia Stewart, the warden at Holman Correctional Facility, went beyond what the statute required by affirmatively providing death-row inmates at Holman a written election form and an envelope in which they could return it to her. 18–8766 App., at 181a.  No fewer than 48 other inmates took advantage of this election.  Petitioner did not, even though he was represented throughout this time period by a well-heeled Boston law firm.

*Price v. Dunn*, 139 S. Ct. 1533, 1535 (2019) (Thomas, J., concurring in denial of certiorari).  Justice Thomas's statements—made in a different case decided on a different record under a different standard of review—are insufficient to command dismissal of Mr. Saunders's procedural due process claim at the Rule 12(b)(6) juncture for at least four reasons.  First, in *Price*, the Supreme Court was reviewing (and granted) the State's application to vacate the lower courts' stay of an Alabama

inmate's execution; the stays had been entered after an examination of evidence, not after an examination of allegations in a pleading.  Second, unlike the evidence in *Price*, the allegations here are that the warden's designee gave an election form to some, but not all, death row inmates.  (Doc. # 1, ¶¶ 76, 77 n.22, ¶¶ 87, 113.)  Once the warden took on the affirmative duty of providing notice beyond what the text of the statute required, the seemingly ad hoc method of partial distribution of the form brings the adequacy of that notice into question.  Third, distinct from the allegations in Mr. Saunders's Complaint, there is no indication that Price brought a challenge that the law library was inadequately sourced.  Fourth and finally, to the extent Price's represented status was essential to Justice Thomas's conclusions, the allegations here are that Mr. Saunders in effect had no counsel during the election period because his attorneys were operating under a conflict of interest and that conflict impacted Mr. Saunders's ability to make a timely election for a nitrogen hypoxia execution.  On these allegations, Defendants' reliance on the statute itself does not establish that notice to Mr. Saunders of the opportunity to select nitrogen hypoxia was adequate under all the circumstances.  Only discovery will tell whether the evidence can back up the allegations.

Defendants' second and third arguments are bound up improperly with evidence.  Contesting Mr. Saunders's allegation that Defendants did not give him an election form during the statutory thirty-day period, Defendants have submitted the

affidavit of Captain Jeff Emberton.  Captain Emberton attests that, in "mid-June 2018" at the warden's direction, he gave an election form and an envelope to every death row inmate.  (Doc. # 12, at 35 & Ex. B.)  Defendants also have submitted Holman's phone records to dispute Mr. Saunders's allegation that he called his attorneys during the election period.  (Doc. # 12, at 36–37 & Ex. E; *see also* Doc. # 1, ¶ 87.)  Because review of the claims is occurring under Rule 12(b)(6), consideration of the affidavit and phone records is improper.  For present purposes, as alleged in the Complaint, it is presumed that Defendants did not give Mr. Saunders an election form within the thirty-day statutory period and that his phone calls to his attorneys went unanswered.  (Doc. # 1, ¶ 77 n.22, ¶ 87.)

Finally, Defendants' fourth argument that Mr. Saunders had "the same access to the Holman library and computer as every other inmate," (Doc. # 12, at 36), does not address the question of whether that access was adequate.  If every death row inmate had access to a library that did not contain materials pertaining to Alabama's newly amended statute, Alabama Code § 15-18-82.1(b)(2), unrestricted library access for all death row inmates would not negate Mr. Saunders's allegation that the library was inadequate for researching the new statutory provision.  Relatedly, Defendants argue that the alleged inadequacy of the library is immaterial here because Mr. Saunders has not alleged that "he wished to conduct legal research during the election period."  (Doc. # 12, at 36, n.144, 41.)  This argument is not

16

persuasive.  Mr. Saunders's allegations infer that a visit to the library to research Alabama Code § 15-18-82.1(b)(2) would have been futile because the legal resources were not updated on a regular basis.  (Doc. # 1, ¶ 91 n.30.)  Defendants make no other arguments for dismissal of Mr. Saunders's procedural due process claim.  Their motion to dismiss this claim is due to be denied.

### 2.   *Equal Protection*

Mr. Saunders brings a claim that Defendants violated his Fourteenth Amendment right to equal protection.  He alleges that he was treated differently from other death row inmates (1) because "he was without conflict-free counsel due to the defendants' retention and appointment of Plaintiff's counsel as Deputy Attorneys General," (Doc. # 1, ¶ 115), and (2) because some inmates received an election form from a corrections officer, while he received one from another inmate.  (Doc. # 1, ¶¶ 115–16.)  He alleges that there is "no rational basis" for the difference in treatment of death row inmates.  (Doc. # 1, ¶ 118.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 215 (1982) (plurality)).  To allege an equal protection claim, Mr. Saunders must show, first, that Defendants treated "him

17

disparately from other similarly situated persons." *Price v. Comm'r, Dep't of Corrs.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (citation and quotation marks omitted). Second, Mr. Saunders "must show that the disparate treatment is not rationally related to a legitimate government interest." *Id.* (citation and quotation marks omitted).

Defendants advance two arguments for the dismissal of Mr. Saunders's equal protection claim. Both focus on the disparate treatment element. Neither has merit.[7]

First, Defendants argue that Mr. Saunders's assertion of conflicted counsel is a red herring because Mr. Saunders "consented to their continued representation of him in writing." (Doc. # 12, at 39.) Defendants submit the signed waiver (Doc. # 12, Ex. A), that Mr. Saunders admits he executed (Doc. # 1, ¶ 35). The fact that Mr. Saunders signed a form titled "Waiver" is not disputed; however, Mr. Saunders alleges that the "purported" waiver is invalid. (Doc # 1, ¶¶ 35–36.) He argues that, because waiver is an affirmative defense, he is not required to negate it in his Complaint but that, alternatively, his Complaint alleges facts establishing that the waiver was not made knowingly and voluntarily. (Doc. # 16, at 6–7.)

Waiver is an affirmative defense identified in Federal Rule of Civil Procedure 8(c)(1). "Generally, the existence of an affirmative defense will not support a motion

---

[7] Defendants' third argument, which is based on Captain Emberton's affidavit (Doc. # 12, at 39), will not be considered on Rule 12(b)(6) review.

to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *en banc reh'g*, 764 F.2d 1400 (11th Cir. 1985) (per curiam) (reinstating panel opinion).  To warrant dismissal, the affirmative defense must "clearly appear[] on the face of the complaint." *Id.*

Mr. Saunders has not provided caselaw or other authority addressing what standard applies when a state or federal habeas petitioner contends that he did not consent to his counsel's conflict of interest.  In the context of the Sixth Amendment, the Eleventh Circuit has held that a defendant "may waive the right to conflict-free counsel as long as the waiver is knowingly and intelligently made." *Duncan v. Alabama*, 881 F.2d 1013, 1017 (11th Cir. 1989) (citation omitted).  "To be knowing and intelligent, the defendant must be told (1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." *Id.*  Absent meaningful briefing from the parties on the appropriate standard, it will be assumed, without deciding, that *Duncan* governs here.

The allegations, considered alongside the waiver, raise enough questions to permit the issue of waiver to survive scrutiny.  First, Mr. Saunders contends that he did not receive full disclosure about the conflict of interest.  The waiver notified Mr. Saunders of a "*potential* conflict of interest" arising from his counsel's representation of "the Alabama Department of Corrections in a lawsuit about

prisoners in Alabama who are disabled and making sure that the Department of Corrections is providing the appropriate services to these prisoners." (Doc. # 12-1, at 1 (Ex. A) (emphasis added).)  Notwithstanding this notification, Mr. Saunders alleges that, "[a]t no time was [he] informed that he is or may be a [*Braggs v.*] *Dunn* class member" or that his attorneys would make arguments that were "squarely against [his] best interest." (Doc. # 1, ¶¶ 34, 36.)  The waiver also does not contain facts bearing on the second and third *Duncan* factors.  It does not establish that Mr. Saunders was informed of the consequences to his defense from continuing with conflict-laden counsel or that he had a right to obtain other counsel.  For these reasons, Mr. Saunders has shown that a valid waiver does not clearly appear on the face of the Complaint.  *See Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 978 (11th Cir. 2015) (holding that the district court erred in granting a motion to dismiss on the affirmative defense of waiver "based on determinations of fact that did not flow inevitably from the allegations of [the plaintiff's] complaint").  Dismissal is not appropriate on this ground.

Second, Defendants contend that Mr. Saunders cannot complain about dissimilar treatment because, by his own allegations, he received an election form during the election period.  (Doc. # 12, at 39.)  This argument does not rebut the difference in treatment that Mr. Saunders says is critical, namely, that an inmate, rather than the State, gave him the form.  The allegations suggest different treatment

*by the State* because the State voluntarily chose to give election forms to some, but not to all, death row inmates.

In sum, Defendants' arguments are insufficient to warrant dismissal of the equal protection claim.

## B.   Count Two—First and Fourteenth Amendment Claim for Denial of Access to the Courts

Mr. Saunders alleges that Defendants deprived him of an adequate law library and created the circumstances that culminated in his attorneys' conflict of interest. He alleges that, because he did not have conflict-free counsel and an adequate law library during the hypoxia election period, he missed the election deadline. (Doc. # 1 ¶ 124.)  "Access to the courts is clearly a constitutional right, grounded in" multiple sources, including the First and Fourteenth Amendments. *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003).  The claim has been described in this way:

> The right of access to the courts as defined in *Bounds v. Smith*, requires only that inmates be provided with some "adequate, effective, and meaningful" way to bring their legal claims before the court. 430 U.S. at 822.  This can be accomplished by one of several alternatives, such as "adequate law libraries or adequate assistance of persons trained in the law." *Id.* at 828.  It must be emphasized that these are but two of the potential alternative ways of guaranteeing a prisoner's right of access to the court; they are not cumulative of one another. *Lewis v. Casey*, 518 U.S. at 350–51; *Bounds*, 430 U.S. at 830.

*Carter v. Price*, No. 2:13-CV-1575-AKK, 2014 WL 5877807, at *5 (N.D. Ala. Nov. 12, 2014) (quoting *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996) and *Bounds v. Smith*, 430 U.S. 817, 822, 830 (1977)).

"Adequate assistance of persons trained in the law" is not synonymous with appointment of counsel. *Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006) (observing that "while *Bounds* clearly recognized the value that lawyers and trained paralegals might add to an access program for indigent inmates, *Bounds* nonetheless contemplated a legal access program that could meet constitutional demands without the provision of counsel"). Because "meaningful access to the courts is the touchstone," the inmate also must show that the alleged inadequacy caused him "actual injury," namely, "that a non-frivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353 (cleaned up). "Actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. For example, an inmate could prove an actual injury by demonstrating that he had "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* at 351.

Mr. Saunders claims he suffered an "actual injury" when "he missed the limited 30-day statutory deadline to file his election of nitrogen hypoxia as his

method of execution." (Doc. # 1 at 29, ¶ 123.)  Defendants have not argued that Mr. Saunders fails to allege actual injury.  (Doc. # 12, at 40.)  The allegations suggest that Mr. Saunders's failure to make a timely election impacted litigation decisions pertaining to the method of his execution.  (*See, e.g.*, Doc. # 1, ¶¶ 132–140.)  However, Defendants argue that Mr. Saunders has not alleged any facts showing that they "intentionally interfered" with his ability to make a timely election.  (Doc. # 12, at 40 (citing Doc. # 1, ¶ 124).)  The court disagrees.

Mr. Saunders's Complaint expounds upon the allegations that Defendants "intentionally interfered" with his ability to make a timely election.  (Doc. # 1, ¶ 124.)  Mr. Saunders alleges that Defendants did not provide him the "tools required" to make an election.  They did not provide a law library that contained the new amendment to the Alabama Code (specifically § 15-18-82.1(b)(2)).  (*See* Doc. # 1, ¶¶ 90–92 & n.30 (describing the alleged inadequacies of the law library at Holman Correctional Facility).)  And he alleges that Defendants frustrated his ability to elect nitrogen hypoxia because they created a conflict of interest by appointing his attorneys to represent the State of Alabama in prison litigation.  According to Mr. Saunders, this appointment denied him "statutorily qualified conflict-free counsel," which effectively left him unrepresented.  (Doc. # 1, ¶ 124.)  He further alleges that he did not "receive the adequate assistance of any person trained in the law" during the thirty-day election period.  (Doc. # 1, ¶ 88; *see also* Doc. # 1, ¶¶ 15,

124.)   Mr. Saunders has alleged facts plausibly suggesting that Defendants intentionally interfered with his ability to make a timely election.

Defendants' counterpoints are unavailing.  First, Defendants point to Mr. Saunders's admission that he received an election form within the thirty-day period to elect nitrogen hypoxia as the method of execution.  They contend, second, that Mr. Saunders failed to plead that he made a request to use the library and, third, that he failed to plead that Defendants stymied his efforts to communicate with his counsel during the election period.  (Doc. # 12, at 36–37, 40–41.)  The first and third arguments omit pertinent facts, namely, that Mr. Saunders alleges that he received the election form with only four days left on the thirty-day statutory clock and that Defendants hampered his relationship with his attorneys by hiring them to defend Defendants in prisoner litigation.  As to the second argument, the allegations, as previously discussed, suggest that a request to access the computer or materials in the law library would have been futile since it did not contain updated legal resources that would have assisted Mr. Saunders in researching the amendment to Alabama Code § 15-18-82.1.  (*See, e.g.*, Doc. # 1, ¶ 91 n.30.)

On the whole of the allegations, Mr. Saunders has alleged plausibly that he was denied "adequate, effective, and meaningful" access to the courts in ways that the Supreme Court has illustrated.  *Lewis*, 518 U.S. at 346 (citation and quotation

marks omitted).  Defendants' motion to dismiss Count Two of the Complaint is due to be denied.

## C.    **Count Three—The ADA Claim**

Mr. Saunders brings a Title II ADA claim, alleging that he suffers from "untreated mental illness" and intellectual disabilities and that Defendants discriminated against him by failing to provide a reasonable accommodation to help him elect nitrogen hypoxia as his method of execution.  He alleges that a reasonable accommodation would have been "assistance of counsel or properly-trained mental health personnel employed by [the ADOC]."  (Doc. # 1, ¶ 97.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.[8]  To state a claim under § 12132, a plaintiff generally must show

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

---

[8] It is well-settled, and not disputed by Defendants, that prisons fall within the statutory definition of "public entity" under the ADA.  *Penn. Dep't of Corrs. v. Yeskey*, 524 U. S. 206, 210 (1998).

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).  A plaintiff can establish the third element by showing that a public entity refused a request for a reasonable accommodation for a disability.  *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1327 (N.D. Ga. 2017) (citing *Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *5 (11th Cir. Aug. 24, 2007)); *accord Smith v. Dunn*, No. 2:19-CV-927-ECM, 2021 WL 4845123, at *4 (M.D. Ala. Oct. 17, 2021), *aff'd sub nom. Smith v. Comm'r, Ala. Dep't of Corrs.*, No. 21-13581, 2021 WL 4916001 (11th Cir. Oct. 21, 2021), *cert. denied sub nom. Smith v. Dunn*, 142 S. Ct. 12 (2021).  Defendants challenge the first and third elements.

### 1.   *First Element*

Mr. Saunders alleges that he is "mentally and intellectually disabled."  (Doc. # 1 ¶ 128.)  The ADA defines a "disability" as "a physical or *mental impairment* that substantially limits one or more major life activities . . . ."  § 12102(1)(A) (emphasis added).  The term "disability" is to be construed broadly.  *Id.* at § 12102(4)(A).  Major life activities include, among others, "speaking, breathing, learning, reading, concentrating, thinking, communication, and working."  *Id.* at § 12102(2)(A).  Additionally, under the federal regulations, "[a]n impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii); *see generally Simpson v. Ala. Dep't of Hum. Res.*, 311 F. App'x 264, 267 (11th Cir.

26

2009) (relying on 29 C.F.R. § 1630.2).  The regulations also provide that a mental impairment encompasses any "mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." § 1630.2(h)(2).

Defendants challenge the Complaint's allegations of intellectual and mental disabilities.  They argue that Mr. Saunders "is not intellectually disabled," relying on a one-sentence excerpt of testimony from the trial court proceedings, where an expert testified that Mr. Saunders "does not appear to be significantly retarded." (Doc. # 12, at 43 (citing but not submitting "Tab P-14 at R. 1257, Doc. 41-19").) The court declines to tether a Rule 12(b)(6) finding to threadbare and piecemeal testimony.  Defendants also have not cited any authority that the consideration of this testimony is proper under Rule 12(b)(6), and their argument ignores the allegations suggesting that Mr. Saunders had a learning disability, *see* § 1630.2(h)(2).  (*See* Doc. # 1, ¶ 99 (alleging that Mr. Saunders "qualified for special education services in elementary school" and "dropp[ed] out of school in the sixth grade at the age of fourteen").)

Defendants admit that "Saunders may have a mental disability for ADA purposes," (Doc. # 12, at 46; *see also* Doc. # 1, ¶ 99 (alleging that Mr. Saunders has "a documented history of suicide attempts" and a diagnosis of "major depression

27

with psychotic features including auditory hallucinations and bipolar disorder").)

Defendants argue, however, that Mr. Saunders has alleged "no facts suggesting that he was unable to make a knowing and intelligent hypoxia election in June 2018 because of his disability" or that "he was unable to make an election because of his disability." (Doc. # 12, at 48.) The argument is perplexing because Mr. Saunders specifically alleges that he has an "untreated mental illness" that prohibited him from "personally mak[ing] the decision to elect a method of execution without assistance . . . ." (Doc. # 1, ¶ 97; *id.* ¶ 129).) "The bar to be considered 'disabled' per the ADA is not a high one." *Smith*, 2021 WL 4845123, at *6. Considering the totality of the allegations about Mr. Saunders's mental illness, his limited education, and his intellectual deficiencies, the court finds that there is sufficient factual matter that makes it plausible that Mr. Saunders had a mental impairment during the election period.

As Defendants allude (Doc. # 12, at 48), that mental impairment also must have substantially limited a major life activity. While the Complaint does not identify by name the major life activity that was substantially limited, the favorable inferences arising from those allegations are that his disability substantially limited at least one major life activity, to include reading, concentrating, thinking, or communicating. *See* § 12102(2)(A). Finding Defendants' arguments unpersuasive as to the first element, the court turns to the third element.

28

2.    *Third Element*

Mr. Saunders alleges that the reasonable accommodation he needed to make a timely election for an execution by nitrogen hypoxia was the "assistance of counsel or properly-trained mental health personnel employed by [the ADOC]."  (Doc. # 1, ¶ 97.)

Defendants are correct that the Complaint contains no allegations that, during the election period, Mr. Saunders made a request for an accommodation to help him make an election for an execution by nitrogen hypoxia.  (Doc. # 12, at 48.)  Mr. Saunders's brief is silent on the third element of his claim and, thus, does not refute Defendants' contention.  Still, dismissal is premature.

After briefing in this case closed, the Eleventh Circuit addressed a death row inmate's ADA claim that the State of Alabama failed to reasonably accommodate his cognitive disability by providing him assistance that would have enabled him to choose nitrogen hypoxia as method of execution.  *See Reeves v. Comm'r, Ala. Dep't of Corrs.*, ___ F.4th ___, No. 22-10064, 2022 WL 225406, at *8 (11th Cir. Jan. 26, 2022), *application to vacate injunction granted sub nom. Hamm v. Reeves*, No. 21A372, 2022 WL 248020 (U.S. Jan. 27, 2022).  In *Reeves*, the Eleventh Circuit cited the Fifth Circuit's test that recognized two avenues "to establish a Title II ADA claim for failure to provide a reasonable accommodation."  *Id.*  Under that test, a plaintiff can "show that the entity knew of his disability and its consequential

limitations, either because the plaintiff requested an accommodation *or* because the nature of the limitation was open and obvious." *Id.* (emphasis in original). The *Reeves* court acknowledged that there were no published opinions in the Eleventh Circuit "on whether there is an 'open and obvious' method for accommodation claims under Title II of the ADA." *Id.* It assumed without deciding that the Fifth Circuit's test stated a correct principle of Title II ADA law. *See id.* This court does the same.

Neither party has analyzed the allegations under the "open and obvious" lens of the Fifth Circuit's test. There are at least some allegations from which it can be inferred that Defendants derived knowledge of Mr. Saunders's mental disability during the State of Alabama's prosecution of Mr. Saunders and its later defense of the conviction and death sentence in post-conviction proceedings. (*See, e.g.*, Doc. # 1, ¶¶ 98–99.) Based on the lack of argument and the recency of the *Reeves* decision, whether Mr. Saunders's need for an accommodation was open or obvious is better left for evidentiary review. The motion to dismiss the ADA claim is due to be denied.

**D.    Count Four—Eighth Amendment Lethal Injection Claim**

Mr. Saunders alleges that Alabama's use of midazolam in the three-drug lethal injection protocol violates his right to be free from cruel and unusual punishment as

guaranteed by the Eighth Amendment.[9]  (Doc. # 1, ¶¶ 105, 137.)  Defendants assert that Mr. Saunders's Eighth Amendment claim is barred by the two-year statute of limitations, while Mr. Saunders invokes equitable tolling to save his otherwise untimely claim.  Defendants argue, alternatively, that Mr. Saunders's Complaint fails to state a plausible Eighth Amendment claim.  While the Complaint states a claim, the claim is time barred.

### 1.   *The Substantive Claim*

Defendants contend that the Complaint does not allege a plausible Eighth Amendment method-of-execution claim under the standard established in *Baze v. Rees*, 553 U.S. 35 (2008) (plurality opinion).  Controlling caselaw commands a contrary conclusion.

The *Baze* standard requires, first, that a prisoner "plead . . . that the challenged execution protocol creates a 'substantial risk of serious harm,' such that prison officials cannot argue 'they were subjectively blameless for purposes of the Eighth Amendment.'"  *West v. Warden*, 869 F.3d 1289, 1297 (11th Cir. 2017) (quoting *Baze*, 553 U.S. at 50).  Second, the prisoner must allege "the existence of an 'alternative procedure' that is 'feasible, readily implemented, and in fact

---

[9] His challenge to the State's legal injection procedures properly falls under § 1983.  *See Nance v. Comm'r, Ga. Dep't of Corrs.*, 981 F.3d 1201, 1208 (11th Cir. 2020) (explaining that § 1983 is the proper statutory vehicle to bring "challenges to specific lethal injection *procedures*"), *cert. granted sub nom. Nance v. Ward*, No. 21-439, 2022 WL 129503 (U.S. Jan. 14, 2022).

significantly reduce[s] a substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 52).

Here, Mr. Saunders alleges that the second drug (rocuronium bromide or vecuronium bromide) is a "paralytic agent[]" and that the third drug (potassium chloride) "causes cardiac arrest." (Doc. # 1, ¶¶ 53–54.) He asserts that "[t]here is a high likelihood that midazolam is incapable of reliably inducing the sustained anesthetic state of sufficient depth necessary to prevent an inmate from experiencing the intolerable pain associated with the second and third drugs." (Doc. # 1, ¶ 56.) Continuing, because midazolam is "a sedative and not an analgesic," "there is a high likelihood" that the prisoner will "not respond to the Corrections' consciousness check, but will feel the excruciating effects of the second and third drugs." (Doc. # 1, ¶ 58.) In other words, "[b]ecause of the way midazolam functions, it could sedate an individual to the point of being incapable of communicating that he or she is in pain while doing nothing to prevent the experience of that pain." (Doc. # 1, ¶ 57.) In sum, the substantial risk of harm, according to the allegations, is that the use of midazolam as the first drug creates a serious risk that Mr. Saunders will be subjected to intolerable pain caused by the second and third drugs (the rocuronium or vecuronium bromide and the potassium chloride). (Doc. # 1, ¶¶ 134, 137–38.) Mr. Saunders further alleges that "nitrogen hypoxia is an available and feasible method of execution in Alabama" and that nitrogen hypoxia "is more humane," and

32

"significantly reduces the substantial risk of pain associated with the State's three-drug lethal injection protocol."  (Doc. # 33, ¶¶ 135, 139.)

The allegations pertaining to the first *Baze* element mirror those that death row inmates alleged in support of an Eighth Amendment claim similarly challenging Alabama's use of midazolam in the three-drug lethal injection protocol.[10]  *See West*, 869 F.3d at 1297.  The Eleventh Circuit found the allegations adequate to satisfy *Baze*'s first prong:  If, as alleged, "midazolam fails to render [the prisoners] insensate, the severe pain caused by the second and third drugs would represent the 'substantial risk of serious harm' the first prong contemplates."  *Id.* (quoting *Baze*, 553 U.S. at 53).  Because the allegations were sufficient in *West*, they are sufficient here.

As to the second *Baze* element, the Eleventh Circuit has held that nitrogen hypoxia is an available and feasible method of execution.  *See Price*, 920 F.3d

---

[10] The Eleventh Circuit summarized the pertinent allegations:

The Complaint alleges that the third drug, potassium chloride, "indisputably causes an unconstitutional level of pain" when a prisoner is not "in a deep level of anesthesia" before potassium chloride is administered.  And, Appellants allege, midazolam cannot be trusted to put prisoners in such a sedated state. They argue that midazolam, as "a sedative and not an analgesic," would likely render a prisoner "unable to respond to . . . the ADOC's consciousness check" yet would do little or nothing to prevent the prisoner from "feel[ing] the excruciating effects of the second and third drugs."  Thus, with respect to Baze's "substantial risk of serious harm" prong, Appellants argue that using midazolam as the first drug creates a serious risk that they will be subjected to the intolerable pain the administration of rocuronium bromide and potassium chloride will cause.

*West*, 869 F.3d at 1297.

at 1327–29.  Notably, the Eleventh Circuit "reject[ed] the State's suggestion that nitrogen hypoxia [was] not available to [the prisoner] only because he missed the 30-day election period." *Id.*  The court is bound by *Price*'s holding, notwithstanding its critics.  *See Price*, 139 S. Ct. at 1538 (Thomas, J., concurring in denial of certiorari) (stating that "[t]he Eleventh Circuit's April 10 analysis about whether nitrogen hypoxia was 'available' and could be 'readily implemented' was suspect under our precedent" (citing *Price*, 920 F.3d at 1327–29)).  The Complaint plausibly states an Eighth Amendment claim, but it is time barred.

### 2.  *Statute of Limitations*

Because the statute of limitations is an affirmative defense, dismissal of a claim "is appropriate only where it is apparent from the face of the complaint that the claim is time-barred."  *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021) (citations and quotation marks omitted).  A time bar is not apparent from the face of the complaint where it pleads a plausible basis for tolling the statute of limitations.  *See Mesones v. Estevez*, No. 19-14119, 2021 WL 3721324, at *4 (11th Cir. Aug. 23, 2021) ("The plausibility standard is the proper standard for evaluating whether Plaintiffs adequately alleged they were entitled to equitable tolling." (citing *Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021))).

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983

action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, the statute of limitations for personal injury actions is two years. *Id.* The two-year statute of limitations for a § 1983 method-of-execution claim accrues "on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *Id.* at 1174. The State of Alabama's change to midazolam is a substantial change to the execution protocol; therefore, "challenges to midazolam as the first drug in Alabama's three-drug execution protocol . . . accrued for statute of limitations purposes when Alabama announced this change." *Lee v. Comm'r, Ala. Dep't of Corrs.*, 731 F. App'x 885, 888 (11th Cir. 2018) (citing *West v. Warden*, 869 F.3d 1289 (11th Cir. 2017), and *Grayson v. Warden*, 869 F.3d 1204 (11th Cir. 2017)). The State of Alabama substituted midazolam for pentobarbital in the three-drug lethal injection protocol in September 2014.

In light of the foregoing principles, the statute of limitations on Mr. Saunders's claim accrued in September 2014, and it expired in September 2016. Mr. Saunders's § 1983 complaint, which was filed in June 2020, comes too late.

Mr. Saunders does not refute that he filed his lawsuit more than two years after the State changed its lethal injection protocol. Rather, he invokes equitable tolling to save his untimely claim.

In § 1983 actions, federal courts apply state law "to determine the applicable . . . tolling rules." *Zamudio v. Haskins*, 775 F. App'x 614, 615–16 (11th Cir. 2019) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007)). Under Alabama law, equitable tolling "is available in extraordinary circumstances that are beyond the petitioner's control and that are unavoidable even with the exercise of diligence." *Weaver v. Firestone*, 155 So. 3d 952, 957–58 (Ala. 2013). "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way as to the filing of his action." *Id.* at 957 (citation and quotation marks omitted) (alterations adopted). Where the time bar is clear on the face of the pleading, the plaintiff bears the burden of affirmatively alleging facts that warrant the application of the doctrine of equitable tolling. *See Ward v. State*, 228 So. 3d 490, 494 (Ala. Crim. App. 2017).

Mr. Saunders's sole argument is that his attorneys' conflict of interest, which existed during the two-year period for filing suit and which he says he did not waive, prevented him from timely commencing an Eighth Amendment action to challenge the lethal injection protocol. He contends that, had his counsel filed an action challenging the protocol change to midazolam, they would have been "'both suing and representing the same adverse parties.'" (Doc. # 16, at 8 (quoting Doc. # 1, ¶ 41).) In other words, he implies that his attorneys would not have filed suit on his

behalf against an entity that his attorneys also would be called upon to defend. This argument, measured against the allegations and the legal standard, is insufficient to invoke the doctrine of equitable tolling.

Mr. Saunders cites no authority discussing equitable tolling. Even if it is assumed that Mr. Saunders has shown that his attorneys' conduct is an extraordinary circumstance that prevented him from filing a § 1983 method-of-execution action on time, Mr. Saunders has not shown that he acted with due diligence in pursuing his rights. First, Mr. Saunders's arguments in his brief do not address the due diligence requirement for equitable tolling. Second, there are no allegations in the Complaint as to how Mr. Saunders acted diligently to preserve his rights during the relevant time frame, which is the two years after the statute of limitations commenced in September 2014. For example, Mr. Saunders does not allege that he contacted or attempted to contact his attorneys during the two-year period that followed the protocol's switch to midazolam. The telephonic and written inquiries he alleges he made to his attorneys occurred a year and nine months after the statute of limitations had expired and were not inquiries about the State of Alabama's 2014 change in its lethal injection protocol. (Doc. # 1, ¶ 87.) There are no allegations that he did anything during the relevant two-year time frame to preserve a claim challenging the protocol's switch to midazolam. *Cf. Holland v. Florida*, 560 U.S. 631, 653 (2010) (holding that a habeas petitioner acted with reasonable diligence by

Case 2:20-cv-00456-WKW   Document 24   Filed 02/17/22   Page 38 of 39

writing his attorney "numerous letters seeking crucial information and providing direction," by "repeatedly contact[ing] the state courts, their clerks, and the Florida State Bar Association," by preparing "his own habeas petition *pro se* and promptly fil[ing] it with the District Court" on the day he learned the statute of limitations had expired); *Lugo v. Sec'y, Fla. Dep't of Corrs.*, 750 F.3d 1198, 1210 (11th Cir. 2014) (holding that a death row inmate had not pleaded facts that warranted equitable tolling of the one-year limitations period to file a federal habeas petition and that "all the documents purporting to show diligence that could entitle [the death row inmate] to equitable tolling of the statute of limitations were filed well after the statute of limitations had already expired and were not documents regarding a federal habeas petition or the filing thereof").

It is clear from the face of the Complaint that Mr. Saunders's § 1983 method of execution claim is time-barred, and he has alleged no facts bearing on due diligence to warrant equitable tolling.  Mr. Saunders's Eighth Amendment claim challenging the method of his execution is due to be dismissed.

## VI.  CONCLUSION

Alabama Code § 15-18-82.1(b)(2) afforded Mr. Saunders a thirty-day period, commencing June 1, 2018, to elect nitrogen hypoxia as his method of execution and to deliver that election in writing to the warden.  Mr. Saunders did not make that election.  This action brings constitutional claims that have as their end goal an

38

execution by nitrogen hypoxia.  Other than one, each claim survives Defendants' Rule 12(b)(6) motion.

It is ORDERED that Defendants' motion to dismiss (Doc. # 12) is GRANTED as to Mr. Saunders's Eighth Amendment claim in Count Four and is otherwise DENIED.  This action proceeds on Mr. Saunders's claims alleging a violation of his Fourteenth Amendment rights to procedural due process and equal protection during the one-time election period for a nitrogen hypoxia execution (Count One), a violation of his First and Fourteenth Amendment rights of access to the courts (Count Two), and a violation of the ADA, 42 U.S.C. § 12112(a), resulting from Defendants' failure to provide him a reasonable accommodation so that he could timely elect nitrogen hypoxia as his method of execution (Count Three).

DONE this 17th day of February, 2022.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE