IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY W. SAUNDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-cv-456-WKW-JTA |
| | ) |
| JOHN Q. HAMM, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy W. Saunders ("Saunders") is a death-row inmate in the custody of the Alabama Department of Corrections ("ADOC") who is challenging ADOC's refusal to allow him to elect nitrogen hypoxia as his method of execution.[1] He filed this action, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and his statutory rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). His claims proceed against the Commissioner of ADOC in his official capacity, the Warden of Holman Correctional Facility in his official capacity, the Attorney General of the State of Alabama in his official capacity, two Deputy Attorney Generals for the State of Alabama, and the ADOC (collectively "Defendants").

---

[1] Presently, Saunders has no scheduled execution date.

Before the Court are Defendants' Renewed Motion for Mental Evaluation of Plaintiff (hereafter "Renewed Motion") (Doc. No. 50), filed pursuant to Federal Rule of Civil Procedure 35, and Saunders' opposition thereto (Doc. No. 54). Upon consideration of the parties' arguments and applicable law, the Court finds that the motion is due to be granted in part and denied in part.

## I. BACKGROUND

Defendants first moved for a Rule 35 mental evaluation of Saunders by Dr. Glen D. King[2] on August 18, 2022. (Doc. No. 43.) Saunders objected. (Doc. No. 45.) The Court heard oral argument on the motion on September 14, 2022. (Doc. No. 46; Doc. No. 49, Tr.) Thereafter, the Court denied the motion without prejudice because it lacked the specificity necessary for a Rule 35 order. (Doc. No. 47.) The Court also ordered the parties to communicate and "within the next 30 days to reach an agreement regarding the evaluation by Dr. Glen D. King of Saunders' mental and intellectual impairments. *See* Fed. R. Civ. P. 35(b)(6)." (*Id*.) The Court further ordered:

> On or before October 14, 2022, a motion for evaluation under Rule 35 shall be filed by Defendants which contains all of the information required under Rule 35(a)(2)(B) and is agreed to by Plaintiff. Said motion shall be accompanied by a jointly proposed order . . . .

(*Id*.)

The parties did not fully comply with the foregoing directives. The parties communicated about the specifics of Dr. King's proposed evaluations, but they were

---

[2] Dr. King is a licensed clinical psychologist. (Doc. No. 50 at 6.)

2

unable to reach a total agreement. Nonetheless, on October 14, Defendants filed their Renewed Motion that was unaccompanied by a jointly proposed order. In the Renewed Motion, Defendants advise the Court of the extent of the parties' agreement:

> . . . The parties reached an agreement solely as to the language contained in th[e] [Proposed Evaluation] section of the instant motion. Plaintiff maintains, based on the factual allegations and legal elements of the third count of his complaint, that Defendants have not established good cause for a mental health evaluation or intellectual disability assessment. However, should this Court find otherwise, Plaintiff agrees the tests proposed by Defendants' expert, Dr. Glen D. King, (listed herein) are tests that measure what they purport to measure and are acceptable for this limited purpose. Plaintiff does not endorse these tests, does not agree they are the best or preferred measures to make these assessments, and does not concur with the findings to be made utilizing these tests.

(Doc. No. 50 at 5–6) (footnotes omitted). Given the parties' inability to agree,[3] the Court now proceeds to resolve the dispute.

## II. DISCUSSION

Rule 35 of the Federal Rules of Civil Procedure provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The Rule 35 movant must show that there is "good cause" why its request should be granted. Fed. R. Civ. P. 35(a)(2)(A). "These two requirements—that the opposing party's mental condition be 'in controversy' and that there be 'good cause' for an examination— must be taken seriously; '[m]ental . . . examinations are only to be ordered upon a

---

[3] The Court is cognizant that it is unable to force the parties to reach an agreement on this matter. However, based on the colloquy between the Court and the parties at the hearing on September 14, it appeared to the Court that the parties would be able to reach a full agreement on this matter and submit a jointly proposed order as anticipated. Unfortunately, that did not occur.

discriminating application by the district judge of' these requirements." *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 615 (N.D. Fla. 2016) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 121-22 (1964)). The movant must make "an affirmative showing . . . that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 118. "Obviously, what may be good cause for one type of examination may not be so for another." *Id*. "The district court's task in assessing a Rule 35 motion is 'intensively fact-specific.'" *Parker v. Intergraph*, Civ. No. 05-HS-211-NE, 2005 WL 8157860, at *3 (N.D. Ala. Aug. 16, 2005) (quoting 8(a) CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE, § 2234.1 (1994)).

Courts are often reluctant to grant Rule 35 motions for mental or psychological examinations absent special circumstances. *Winstead*, 315 F.R.D. at 614.

> Special circumstances justifying the need for a Rule 35 examination, however, include "(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 193 (D.N.J. 2003) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)). "Also important is any 'allegation of present, ongoing, or permanent mental injury or disorder.'" *Winstead*, 315 F.R.D. at 614-15. Absent one or more of these conditions, the conservative, majority view of courts is that plaintiff's mental state is not "in controversy" within the meaning of Rule 35. *See id*.

*Gray v. Koch Foods, Inc.,* Case No. 2:17-cv-595-ALB-SMD, 2019 WL 13138114, at *1 (M.D. Ala. Sept. 27, 2019).  The decision to order an examination is within the court's discretion even where good cause is shown.  *Winstead*, 315 F.R.D. at 616-17 (quoting *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y. 1994)).

Defendants argue that a Rule 35(a) evaluation of Saunders is warranted because his mental and intellectual conditions are "in controversy" due to his allegation that he is a qualified individual with a disability under the ADA.  Defendants request that this Court order Saunders to submit to testing for evaluation of his intellectual disability and for his mental illness.  Saunders argues in opposition that Defendants have not shown good cause as required under Rule 35.

The Court addresses each requirement for a Rule 35 examination below.

A.  Mental and Intellectual Conditions "in Controversy"

A litigant may place his mental or physical condition "in controversy" through his pleadings.  As the Supreme Court noted in *Schlagenhauf*:

> . . . [t]here are situations where the pleadings alone are sufficient to meet these requirements.  A plaintiff in a negligence action who asserts a mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.  This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action.

379 U.S. at 118-19.

Here, Saunders through his pleadings has placed his mental and intellectual conditions "in controversy" within the meaning of Rule 35.  In the Complaint, Saunders

5

alleges he is a qualified individual with a disability under the ADA because he is mentally and intellectually disabled. (Doc. No. 1 at 30, ¶ 128.) As grounds for his intellectual disability claim, Saunders alleges that in his state post-conviction and federal habeas proceedings, his counsel "characterized [him] as having limited education and intellectual ability, a history of psychiatric disorders and substance abuse, and notably, that [he] is ineligible for the death penalty based on an *Atkins* based mental disability such that his execution would violate the Fifth, Eighth, and Fourteenth Amendments to the Constitution." (*Id*. at 24, ¶ 98) (footnotes omitted.) Saunders further alleges that "he qualified for special education services in elementary school" and dropped out at the age of fourteen, when he was in the sixth grade. (*Id*. at 25, ¶ 99.) As grounds for his mental disability claim, Saunders alleges that he has "a well-documented mental-health disorder." (*Id*. at 11, ¶ 42.) He also states that he "suffers (and suffered) from untreated mental illness to the extent that he could not (and cannot) personally make the decision to elect a method of execution without the assistance of counsel or properly-trained mental health personnel employed by Corrections." (*Id*. at 23, ¶ 97.) Additionally, he notes that he has a history of suicide attempts and has been diagnosed with major depression and bipolar disorder. (*Id*. at 24, ¶ 99.)

     Moreover, during oral argument, Saunders confirmed that he is alleging in his Complaint that he has a present, ongoing, or permanent mental impairment and intellectual impairment. (Doc. No. 49, Tr. at 20.) In addition, at oral argument, Saunders conceded that his mental health and intellectual capabilities were "in controversy" within the

meaning of Rule 35.[4] (Doc. No. 49, Tr. at 17-18, 20.) Accordingly, the Court finds that Saunders has placed his mental and intellectual condition "in controversy" under Rule 35(a). *See Gray,* 2019 WL 13138114, at *1 (noting that the need for a Rule 35 examination can be justified by plaintiff's concession that his mental condition is in controversy within the meaning of Rule 35(a) and any allegation of present, ongoing, or permanent mental injury or disorder) (quotations and citations omitted).

B. Good Cause

"Whether 'good cause' is established depends on both relevance and need." *Pearson v. Norfolk-S. Ry. Co.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998) (citations omitted). As to need, the court must examine the ability of the movant to obtain the desired information by other means. *Id.* (citing *Schlagenhauf*, 379 U.S. at 118). When information is unavailable through another avenue, there is good cause to order a Rule 35 examination.

---

[4] Saunders' concession was accompanied by a caveat concerning "the scope of his disability." (Doc. No. 49, Tr. at 17) ("... with a caveat ... where the defendants and I disagree is the scope of his disability"). Saunders contends that in this Title II ADA case, he is not required to establish that he is intellectually disabled under *Atkins v. Virginia*, 536 U.S. 304 (2002). (*Id.*)

> ... This is an Americans with Disabilities Act claim, so this is not based on an IQ standard. It is not based on adaptive deficits. I mean, this is a very discrete issue. It's a very discrete period of time. Essentially, it's four days in June. It's regarding the election form program that was offered by the [ADOC] between June 26th of 2018 to June 30 of 2018.
>
> And so I believe what they're asking for is much broader than what is, in fact, at issue here. It's whether or not Mr. Saunders needed an accommodation in order to be able to understand that form and to be able to access that program and whether they knew or should have known in 2018 that he needed that accommodation. And so that's far different from whether or not he meets an *Atkins* Eighth Amendment standard. This is a statutory right.

(Doc. No. 49, Tr. at 17-18.)

7

*Id.*; *D'Angelo v. Potter*, 224 F.R.D. 300, 304 (D. Mass. 2004) (finding good cause to order a DNA examination where plaintiff lacked alternative forms of discovery which would allow her to prove her allegations at trial).

Saunders argues that Defendants have other means at their disposal to obtain the desired information they seek, such as a review of his ADOC medical records. Saunders submits that the information contained in his prison records is a better barometer of his disability in 2018 than the information that might be obtained from an evaluation in 2022. Saunders asserts that given the information that was in his prison records and was available to Defendants in 2018, Defendants should have known that he needed an ADA accommodation to participate in the Election Form Program. For these reasons, Saunders posits that Defendants have not shown "good cause" for a Rule 35 examination; thus, there is presently no reason for such examination, as it would show his current mental and intellectual conditions, not these conditions as they existed in 2018.

The Court now turns to determine if good cause exists for a Rule 35 evaluation of each condition alleged by Saunders.

### 1. Intellectual Disability

At oral argument, Defendants explained the need for an intelligence test to be conducted on Saunders:

> We don't have a copy of an IQ test in the file. Mr. Saunders, to the best of the State's knowledge, was not IQ tested at trial. He had a psychologist, Dr. Stanley Brodsky, who did some mental evaluation on him, and his mitigation expert, who, again, is not a psychologist, said that her opinion was that he was not intellectually disabled, but that was not a firm expert opinion.

> He did not receive . . . an *Atkins* evaluation during Rule 32 or during federal habeas. He doesn't even have a Beta test in his file. Most ADOC inmates are Beta tested, but death row inmates are not. So we don't at this point know what his IQ is. We should not have to simply take it on faith that he has an intellectual disability. Now, he has pointed to the fact that he left school early, I think in the 6th grade, at the age of 14, and that he may have qualified for special education at some point along the way, but that in and of itself is not prime evidence of intellectual disability. That's the kind of evidence that a psychologist or a psychiatrist might consider, but in and of itself, that is not pure evidence of intellectual disability.

(Doc. No. 49, Tr. at 3-4.)

Saunders responds that Defendants have failed to establish "good cause" for the *Atkins*-level IQ testing they seek. Saunders argues that if the Court concludes otherwise, the intelligence testing Defendants have proposed is cumulative and overly broad. Saunders contends that the testing should be limited in scope and range.

Upon consideration of all the facts before it, the Court concludes that Defendants have shown "good cause" for a Rule 35 examination of Saunders with respect to his "intellectual disability" claim because they have shown both relevancy and need for this information. Given that (1) the ADOC has no copy of IQ test results for Saunders in its records; (2) Saunders has not taken an IQ test while in the ADOC's custody; and (3) at some point in 2016, the ADOC stopped *Beta*-testing death-row inmates, Defendants have no other means to obtain information about Saunders' intelligence level outside of a Rule 35 examination.

That said, it is well understood that to establish an intellectual disability claim under the ADA, Saunders is not required to prove that he is intellectually disabled under *Atkins*.

9

Saunders argues that his "intellectual disability relevant to his very limited ADA claim can be assessed without a comprehensive *Atkins* evaluation being conducted." (Doc. No. 52 at 7.) Yet, he proposes no other avenues by which his IQ may be measured. The Court sees no viable alternative to measure IQ other than by a garden variety IQ test. Even so, the Court concurs with Saunders inasmuch as the battery of four tests Defendants propose to measure his intelligence level is cumulative and overly broad. Defendants have stated no reason to test Saunders for adaptive deficits for his ADA claim and the Court finds none. The Court thus will limit the intellectual testing to one IQ test and one wide-range achievement test.[5]

    2.    *Mental Disability*

Saunders argues that a Rule 35 examination of his mental disability is premature because Defendants have other means to obtain the desired information. In this case, the "other means" proposed by Saunders is to have a medical expert review his ADOC records.

In response, Defendants posit that the mental health information in their records is stale, which is why they need a current assessment of Saunders' mental condition, because (1) their major mental health information is seventeen years old,[6] and (2) he has not been

---

[5] The Court considers the representations made by Defendants at oral argument in deciding which tests are appropriate. (Doc. No. 49, Tr. at 5, 9, 11.)

[6] At oral argument, Defendants advised that "all of the major mental health evaluations for Mr. Saunders were done in 2005 and prior. He had Dr. Brodsky, who looked at him at the time of trial. He had some people at Waccamaw and in South Carolina who looked at him." (Doc. No. 49, Tr. at 10.) Given the age of the information Defendants possess about Saunders' mental condition, Defendants argued a current assessment of his mental condition is necessary, as "it will give us a better picture of where he was in 2017 than would the tests he had done in 2005." (*Id.* at 11.) Elaborating, Defendants stated:

10

on ADOC's mental health caseload[7] since July 2014.  Additionally, in response to the Court's inquiry whether they had attempted other means of obtaining this information, such as any type of expert review, Defendants advised:

> Dr. King is reviewing the [A]DOC records as part of his work in this case. He reviews records prior to meeting with any inmate to get an idea of what mental health treatment had been conducted, what the inmate has been diagnosed with prior to his meeting with them, along those lines.

(Doc. No. 49 at 15.)

Considering all of the facts before it, the Court concludes that Defendants have shown "good cause" for a Rule 35 examination of Saunders with respect to his mental disability claim as they have shown both relevancy and need for this information.  Given

---

> Proximity, Your Honor.  We are four years out from 2018, versus 13 years out from 2005 to 2018.  We'd just like to see what Mr. Saunders' status is after having spent the last 17 years with the [ADOC].  We have evaluations from before and right at the beginning of his time with the [A]DOC.  We would like to see where he is now.

(*Id*. at 12.)  Upon further inquiry from the Court, Defendants argued:

> There has been no evaluation past an MMPI-2 that was administered in November 2005, but that's the last big evaluation we have in his mental health file.  During Rule 32 and habeas, if he received any sort of psychological evaluation, it was not through ADOC and it is not in his mental health records, and [A]DOC does not have notice of them.  There was not any sort of an evidentiary hearing in either state or federal postconviction, so we don't have notice of anything beyond Dr. Brodsky's and Ms. Terrell's reports at the time of trial in 2005, and the MMPI in his file administered by [A]DOC in November 2005.

(*Id*. at 14.)

[7] Defendants advise that "[Saunders] is currently classified as Mental Health Code A, which means that he is not on the mental health caseload, nor has he been on the caseload since July 8, 2014." (Doc. No. 50 at 5.)

the lack of information in ADOC's records about Saunders' mental health, it appears that Defendants have no other means to obtain information about his mental health condition outside of a Rule 35 examination. Nevertheless, the Court concurs with Saunders that the battery of six mental health tests Defendants propose is cumulative and overly broad. Defendants shall be limited to one test for personality traits, one test to identify malingering, and one test to assess deliberate distortions in the self-reporting of symptoms.

### III. CONCLUSION

For the reasons stated above, it is

ORDERED that Defendants' Renewed Motion for Mental Evaluation of Plaintiff, (Doc. No. 50) is GRANTED IN PART to the extent that Plaintiff, Timothy W. Saunders, shall submit to a mental evaluation to assess both his intellectual ability and his mental condition by Dr. Glen D. King, a licensed clinical psychologist, as follows:

1. Dr. King is authorized to conduct the mental evaluation of Plaintiff at Holman Correctional Facility on two separate dates in December 2022 at the time and the location specified by prison personnel.

2. Dr. King is authorized to test Plaintiff's intellectual ability by administration of the Wechsler Adult Intelligence Scale, 4th ed. **(WAIS-IV)** and the Wide Range Achievement Test, 5th ed. **(WRAT5)**.

3. Dr. King is authorized to test Plaintiff's mental condition by conducting a clinical interview and mental status exam, and by administration of the Minnesota Multiplastic Personality Inventory-2 **(MMPI-2)**, the Miller Forensic Assessment of

Symptoms Test **(M-FAST)**, and the Structured Interview of Reported Symptoms-2 **(SIRS-2)**.

4. Defendants' Renewed Motion for Mental Evaluation of Plaintiff (Doc. No. 50) is DENIED in all other respects.

DONE this 5th day of December, 2022.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE