IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY W. SAUNDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-456-WKW-JTA |
| | ) | |
| JOHN Q. HAMM, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Timothy W. Saunders ("Saunders") is a death-row inmate in the custody of the Alabama Department of Corrections ("ADOC"). Presently, Mr. Saunders has no scheduled execution date. He filed this action, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and his statutory rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA").[1] His claims proceed against the Commissioner of ADOC, the Warden of Holman Correctional Facility, the Attorney General of the State of Alabama, all in their official capacities, and the ADOC ("Defendants"). He seeks declaratory and injunctive relief against the Defendants.

---

[1] On February 17, 2022, the Court dismissed Plaintiff's Eighth Amendment method-of-execution claim challenging the constitutionality of Alabama's three-drug, lethal injection protocol. (Doc. No. 24.)

Before the Court is Plaintiff's Motion to Compel Response to Interrogatory From

Defendant Steve Marshall.  (Doc. No. 58.)  Specifically, this motion concerns Defendant

Steve Marshall's response to Plaintiff's Interrogatory No. 2 in Plaintiff's First Set of

Interrogatories to Defendant Steve Marshall.  (Doc. No. 58-1.)  In responding to this

interrogatory, Defendant Marshall objected to it and did not answer with the requested

information.  Plaintiff seeks an order compelling Defendant Marshall to provide the

information this interrogatory requests.

This matter has been fully briefed and is ripe for review.  For the reasons discussed

below, Plaintiff's motion to compel is due to be denied.[2]

## II.  APPLICABLE LAW

The Federal Rules of Civil Procedure govern discovery in a civil case.  Rule 26(b)(1)

provides that, unless otherwise limited, the scope of discovery encompasses:

> any nonprivileged matter that is relevant to any party's claim or defense
> and proportional to the needs of the case, considering the importance of
> the issues at stake in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Motions to compel discovery under Fed. R. Civ. P. 37(a) are committed to the sound

discretion of the trial court.  *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731

(11th Cir. 1984).  The moving party bears the initial burden of proving that the information

---

[2]  A magistrate judge is authorized to resolve non-dispositive, pretrial matter matters, including a discovery dispute.  *See* Fed. R. Civ. P. 72(a).  On August 3, 2022, the Court assigned this case to the undersigned for pre-trial management.

sought is relevant. *Schwanke v. JB Medical Mgt. Solutions, Inc.*, 2017 WL 3034039, at *2 (M.D. Fla. 2017) (unpublished) (internal quotes and citations omitted).

Although the relevancy standard "has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case[,] . . . discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Ala. & Gulf Coast Ry., LLC v. United States*, No. 1:10-00352-WS-C, 2011 WL 1838882, at *4 (S.D. Ala. May 13, 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (further quotation omitted). As federal district courts in Alabama and elsewhere have noted, "[t]he relevancy requirement should not be misapplied so as to allow fishing expeditions in discovery." *Sibille v. Davis*, No. 3:13-cv-00566-TFM, 2014 WL 12740372, at *1 (M.D. Ala. May 2, 2014) (quoting *United States v. Lake Cty. Bd. of Comm'rs*, No. 2:04-cv-00415, 2006 WL 1660598, at *1 (N.D. Ind. June 7, 2006)); *VIC Equipment, LLC v. Hewlett Packard Co.*, No. 1:12-cv-00066, 2012 WL 13076708, at *7 (S.D. Ala. Oct. 11, 2012).

### III.  DISCUSSION

**A.     Plaintiff's claims**

A review of Plaintiff's remaining claims is necessary for a full understanding of his motion to compel. With the dismissal of Plaintiff's Eighth Amendment claim, Plaintiff proceeds on three claims:  (1) a Fourteenth Amendment Equal Protection/Due Process claim that he was denied the right to conflict-free counsel during the June 2018 nitrogen hypoxia election period, received inadequate notice of the election period, and was treated differently from other inmates because he lacked conflict-free counsel (Doc. No. 1 at ¶¶

106–118); (2) a First Amendment claim that he was denied access to courts because he lacked conflict-free counsel or an adequate law library during the election period (*id*. at ¶¶ 119–126); and (3) a statutory ADA claim that he is intellectually and mentally disabled and required an accommodation to elect nitrogen hypoxia (*id.* at ¶¶ 127–131), such as "the assistance of counsel or properly-trained mental health personnel employed by [ADOC]," (*id.* at ¶ 97).

## B.     Discovery request at issue

On September 16, 2022, Plaintiff served his First Set of Interrogatories to Defendant Steve Marshall.  (Doc. No. 58-1 at 2-9.)  Plaintiff's First Set contained five interrogatories. Interrogatory No. 2 is the subject of this discovery dispute.   This interrogatory and Defendant Marshall's response thereto are set out below:

> **2.     Identify all employees of the Attorney General's office in communication with ADOC or the Warden of Holman Correctional Institution on the day (and night) of an execution during the years 2018-2022.**
>
> Defendant objects to this request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, and the deliberative-process privilege.  Defendant further objects to this request to the extent that it seeks information not within his personal knowledge.  Without waiving these objections, Defendant states as follows:
>
> Defendant objects to this request because the identities of employees within the Office of the Attorney General who spoke to the Warden of Holman Correctional Facility on execution days in 2018-2022 is irrelevant to any issue in the present litigation.

(Doc. No. 58-1 at 13.)

Subsequently, on December 19, 2022, Defendant Marshall amended his answer to this interrogatory with the following response:

> Defendant objects to this request to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, and the deliberative-process privilege. Further, Defendant objects to this request because the identities of employees within the Office of the Attorney General who spoke to the Warden of Holman Facility on execution days in 2018-2022 is irrelevant to any issue in the present litigation.

(Doc. No. 58-4 at 4.)

Plaintiff contends that Defendant Marshall's response is inadequate and that he should be compelled to provide the information requested. Plaintiff acknowledges that communications between the employees of the Attorney General's office and ADOC or the Warden at Holman on execution days would be privileged communications; however, Plaintiff points out that he seeks only the *identities of persons* and not the content of the communications between these individuals and the ADOC or Holman's Warden. Plaintiff argues that because he requests names only, not privileged communications, Defendant Marshall should be required to answer the interrogatory as asked and identify those employees.

Defendants counter that this motion to compel should be denied because the information is not relevant to Plaintiff's remaining claims. Defendants aver that the information requested in Interrogatory No. 2 could arguably be relevant to Plaintiff's Eighth Amendment claim challenging the constitutionality of Alabama's three-drug lethal injection protocol; however, since that claim has been dismissed, the requested information is simply irrelevant to the remaining three claims in this case. Additionally, Defendants

urge that this information is protected from disclosure by the attorney-client privilege, the work product doctrine, and the deliberative process privilege.

## IV.  ANALYSIS

As Rule 26(b)(1) specifies, for information to be discoverable, at a minimum, it must be "relevant to any party's claim or defense" and "nonprivileged."  Fed. R. Civ. P. 26(b)(1).  "The starting point for ascertaining whether or not discovery may be had on a topic is the Complaint and the defenses."  *United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*, 1:08-cv-02277, 2012 WL 13234162, at *2 (N.D. Ga. May 24, 2012).  The Court first considers the relevancy of the information at issue.

### A.      Is the information relevant to Plaintiff's claims or to a defense thereto?

Reiterating Plaintiff's remaining claims, he has (1) a Fourteenth Amendment Equal Protection/Due Process claim that he was denied the right to conflict-free counsel during the June 2018 nitrogen hypoxia election period, received inadequate notice of the election period, and was treated differently from other inmates because he lacked conflict-free counsel (Doc. No. 1 at ¶¶ 106–118); (2) a First Amendment claim that he was denied access to courts because he lacked conflict-free counsel or an adequate law library during the election period (*id*. at ¶¶ 119–126); and (3) a statutory ADA claim that he is intellectually and mentally disabled and required an accommodation to elect nitrogen hypoxia (*id*. at ¶¶ 127–131), such as "the assistance of counsel or properly-trained mental health personnel employed by [ADOC]," (*id*. at ¶ 97).

A common thread in the foregoing three claims concerns Plaintiff's postconviction counsel during the relevant time period, *viz*., whether he had "conflict-free counsel" and/or

received "the assistance of counsel" at that time.  Plaintiff states that the "nexus of this lawsuit is the hiring of Timothy Saunders' postconviction counsel by the Attorney General to represent the Alabama Department of Corrections ("ADOC") while postconviction counsel were already representing Mr. Saunders in a suit against the ADOC."  (Doc. No. 61 at 3.)

Based on the pleadings and statements of counsel, it appears that the relevant time frame for any factual predicate for Plaintiff's claims is from November 2009, when his counsel from Balch & Bingham LLP filed a state post-conviction petition in state court under Alabama Rule of Criminal Procedure 32 on his behalf, to the end of June 2018, when the statutory nitrogen hypoxia election period ended.  Thus, facts that would give rise to Plaintiff's First and Fourteenth Amendment claims and his ADA claim concern the actions of the Defendants that occurred between November 2009, and the end of June 2018.

Plaintiff has moved to compel the disclosure of the names of the employees in the Attorney General's Office who communicated with ADOC and/or prison personnel at Holman on execution days and nights from 2018-2022.  "A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's note (2015 amendment).  However, Plaintiff does not explain how the information requested in Interrogatory No. 2 concerns either to the relevant time period (November 2009–June 2018) or to his remaining claims.

In short, communications between the employees in the Attorney General's Office and ADOC and/or Holman personnel on execution days and nights from 2018-2022

arguably may have been relevant to Plaintiff's dismissed Eighth Amendment claim, but these communications are irrelevant to Plaintiff's remaining claims.

**B.      Is the requested information privileged?**

Defendants point out that the Attorney General's Office is counsel to all state agencies, boards, bureaus, commissions, and departments.  For this reason, they contend that Defendant Marshall should not be compelled to produce a list of his employees who communicated with ADOC or Holman Correctional Facility on the dates specified because these communications are privileged attorney-client communications.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege "protects the disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance."  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994).  "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice," for "sound legal advice or advocacy serves public ends and . . . such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Upjohn Co.*, 449 U.S. at 389.  What is true for individuals and corporations is true for government agencies as well.  Thus, government agencies, such as ADOC, enjoy the privileges available to individuals in civil litigation, including "the deliberative process privilege, attorney-client privilege,

and attorney work-product privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

Plaintiff acknowledges that communications between the Attorney General's Office and the ADOC and/or Holman prison personnel would be protected communications, and he has not requested the content of these privileged communications. Plaintiff posits that typically the identity of clients is not privileged. (Doc. No. 58 at 6 (citing *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992)). Defendants concur with Plaintiff's position. However, Defendants counter that in this instance, Plaintiff seeks the identity of *counsel*, not *clients*. Defendants submit that Plaintiff is not entitled to the identity of counsel.

Explaining their objection to the disclosure of the identity of counsel, Defendants state: "He asks for a list of every lawyer from the Office of the Attorney General who had communication with anyone at ADOC or with the Holman warden—their clients—on the day (and night) of executions from 2018–2022." (Doc. No. 62 at 15.) Defendants may have misinterpreted Plaintiff's Interrogatory No. 2. They are incorrect that Plaintiff has requested a list of "every lawyer" from the Attorney General's Office. Instead, Plaintiff's Interrogatory No. 2 asks Defendants to "identify *all employees* of the Attorney General's office" who had communications with ADOC or the Warden at Holman on execution days and nights during the years 2018-2022. (*See* Doc. No. 58-1 at 8) (emphasis added). Katherine Robertson, Chief Counsel to Defendant Marshall signed the Responses to Plaintiff's First Interrogatories on Defendant Marshall's behalf. (Doc. No. 58 at 3-5.) The answers to some of these interrogatories were based on institutional knowledge. Ms.

Robertson testified that in answering Plaintiff's interrogatories, she conferred with other employees, "paralegals, primarily" prior to answering them.  (*Id*. at 4.)  Thus, not all employees in the Attorney General's office are attorneys; there are also paralegals and administrative support staff in the Attorney General's office.

However, regardless of whether only attorneys in the Attorney General's office communicated with ADOC and/or the Warden at Holman on execution days from 2018-2022 or whether both attorneys and other employees in the Attorney General's office had these communications, that information is irrelevant to Plaintiff's remaining claims. Plaintiff has not demonstrated how this information could *possibly* lead to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 351-52. Defendants correctly objected to this interrogatory for relevancy reasons.

As this information is not discoverable under Fed. R. Civ. P. 26(b)(1) because it is irrelevant to the remaining claims or defenses, the Court need not determine whether this information is also exempt from disclosure due to the attorney-client privilege, the work product privilege, and/or the deliberative-process privilege.

## V. CONCLUSION

Accordingly, it is ORDERED that Defendants' objection to Interrogatory No. 2 of Plaintiff's First Set of Interrogatories is SUSTAINED, and Plaintiff's Motion to Compel Response to Interrogatory From Defendant Steve Marshall (Doc. No. 58) is DENIED.

DONE this 9th day of March, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE